UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

NATHANIEL AIKENS

                                             Plaintiff,    **FIRST AMENDED**
        -against-                                         **COMPLAINT AND**
                                                              **JURY DEMAND**

THE CITY OF NEW YORK, POLICE OFFICER
ROBERT MIXON #31175, POLICE OFFICER MILTON
DAVIS #7130, POLICE OFFICER KEVILLE CAESAR
#11345,                                                     13CV3371 (JBW)(RLM)

                                                      Defendants.

------------------------------------------------------------------ x

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of New York.

2.    The claims arise from February 26, 2011 and July 11, 2012 incidents in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiff to, among other things, false arrest and malicious prosecution.

3.    Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4.    This action is brought pursuant to 28 U.S.C. §1331, 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution. Pendent party jurisdiction and supplementary jurisdiction over plaintiff's state law claims are asserted.

5. The amount in controversy exceeds $75,000.00 excluding interest and costs.

6. Venue is laid within the United States District Court for the Eastern District of New York in that Defendant City of New York is located within, and the events occurred within, the boundaries of the Eastern District of New York.

## PARTIES

7. Plaintiff is a citizen of the United States and at all times here relevant resided in Brooklyn, NY.

8. The City of New York is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

9. All others individual defendants ("the officers"), including John Doe #1-3, individuals whose names are currently unknown to plaintiff, are employees of the NYPD, and are sued in their individual capacities.

10. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL ALLEGATIONS

11. On February 26, 2011, Mr. Aikens was talking with a friend in the vicinity of Grand Ave. and Clifton Pl., Brooklyn, NY. At approximately 2:30AM, NYPD officers pulled up in

their car and demanded that Mr. Aikens approach. Mr. Aikens complied. The officers demanded to see Mr. Aikens' identification. Again, Mr. Aikens complied. The officers verified there were no warrants for his arrest but, instead of letting him go, the officers jumped out of their car and told Mr. Aikens to put his hands up.

12. Mr. Aikens was searched and no illegal substances were recovered. Mr. Aikens' friend's car that was parked nearby was also searched but no illegal contraband was found. Despite no probable cause to detain him, Mr. Aikens was held at the scene for approximately thirty minutes while additional officers arrived and searched the nearby sidewalk, house and yards. Eventually, the officers claim to have found a weapon, not in his possession or in his vicinity, and placed Mr. Aikens under arrest.

13. Mr. Aikens was arraigned under a criminal court complaint signed by defendant officer Mixon charging Criminal Possession of a Weapon in the 2nd degree. Bail was set and Mr. Aikens was sent to Riker's Island. Four days later he posted the bail and was released.

14. After three court appearances, the Kings County District Attorney's Office advanced the case and dismissed it.

15. On July 11, 2012 at approximately 12AM, Mr. Aikens was in the vicinity of Ralph Ave. and Sumpter St. in Brooklyn, NY. He was speaking with his child's mother when NYPD officers pulled up with their sirens flashing. The officers, including defendant officer Keville, demanded to know what Mr. Aikens was doing there and took his identification. Mr. Aikens was searched and no illegal contraband was found. The officers used his identification to confirm he did not have any outstanding warrants.

16. The officers then began to questions Mr. Aikens about a truck that was parked nearby. Mr. Aikens repeatedly denied owning the truck or knowing anything about it. The officers

3

demanded the keys. Again, Mr. Aikens explained it was not his truck. The defendant officer then grabbed the keys that Mr. Aikens did have on him and tried to open the truck. The keys could not open the truck.

17. Mr. Aikens was then placed under arrest and handcuffed despite having committed no crime. When Mr. Aikens asked why he was being arrested, the defendant officer responded, "I don't know yet".

18. Mr. Aikens was taken to the precinct and eventually processed through central booking. Approximately seventeen hours after his arrest, Mr. Aikens was released from central booking because the Kings County District Attorney's Office declined to prosecute him.

19. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff, and agreed, shortly after the incident, not to report each others' illegal actions and to fabricate a story and falsely charge plaintiff with offenses, to justify the search.

20. During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

## DAMAGES

21. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

    a.    Violation of his rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure;

b.  Violation of his right to Due Process of Law under the Fourteenth Amendment to the United Stated Constitution;

c.  Violation of his New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

d.  Violation of his New York State Constitutional right under Article 1, Section 6 to Due Process of Law;

e.  Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

f.  Physical pain and suffering;

g.  Loss of liberty.

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983)

22. The above paragraphs are here incorporated by reference.

23. Defendants acted under color of law and conspired to deprive plaintiff of his civil, constitutional and statutory rights to be free from unreasonable search and seizure and to due process of law pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, and are liable to plaintiff under 42 U.S.C. §1983.

24. Defendants falsely searched and arrested plaintiff and failed to intervene in each other's obviously illegal actions. Defendants filed false complaints against plaintiff. Eventually, all charges were terminated in plaintiff's favor.

25. Plaintiff has been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
(MUNICIPAL AND SUPERVISORY LIABILITY)

26. The above paragraphs are here incorporated by reference.

5

27. The City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

28. The aforesaid event was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers stop and frisk citizens without reason, use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

29. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have

6

made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

30. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which Kelly has done on many occasions.

31. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

32. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This

7

failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal. Furthermore, although the City has been on notice, through plaintiff's complaints to the CCRB from the first day of the incidents complained of, the City has failed to remedy the wrong.

33. Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

### THIRD CAUSE OF ACTION
(ASSAULT)(2012 Incident)

34. Defendants made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful and offensive touching.

35. Plaintiff was damaged by defendants' assault.

### FOURTH CAUSE OF ACTION
(FALSE ARREST AND IMPRISONMENT)(2012 Incident)

36. The above paragraphs are here incorporated by reference.

37. Defendants subjected plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

38. Defendants intended to confine plaintiff.

39. Plaintiff was conscious of the confinement and did not consent to it.

40. As a result of the false arrest, imprisonment, and deprivation of liberty, plaintiff was damaged.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

    B.    Awarding plaintiff punitive damages in an amount to be determined by a jury;

    C.    Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

    D.    Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: Brooklyn, New York
December 20, 2013

TO: New York City
Corporation Counsel Office
100 Church Street, 4th floor
New York, NY 10007

Police Officer Robert Mixon
88th precinct
298 Classon Ave.
Brooklyn, NY 11205

Police Officer Milton Davis #7130
81st Precinct
30 Ralph Avenue
Brooklyn NY 11221

Police Officer Caesar Keville
112th Precinct
68-40 Austin St.
Forest Hills, NY 11375

Very truly yours,

*[signature]*

Stoll, Glickman & Bellina, LLP
By: Nicole Bellina
Attorney for Plaintiff
475 Atlantic Ave. Fl.3
Brooklyn, NY 11217
(718) 852-3710 x103
nicole_bellina@yahoo.com

9